UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D‌AMON P. H‌UMPHRIES,

Plaintiff,

v.

A‌LLSTATE I‌NSURANCE C‌O.,

Defendant.

Case No. 18-cv-11006

U‌NITED S‌TATES D‌ISTRICT C‌OURT
J‌UDGE G‌ERSHWIN A. D‌RAIN

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL LIFTING OF STAY OF PROCEEDINGS AND DENYING PLAINTIFF'S MOTION TO RE-TRANSFER CASE TO DISTRICT OF ARIZONA [#20]

### I. I‌NTRODUCTION

On May 25, 2017, Plaintiff Angela Humphries ("Plaintiff") filed the instant action against Defendants Allstate Insurance Company and CorVel Corporation ("CorVel"), alleging breach of contract, bad faith, and aiding and abetting. *See* ECF No. 1. On March 27, 2018, this case was transferred to this Court after the United States District Court for the District of Arizona ("Arizona District Court") determined that it did not have personal jurisdiction over Defendant Allstate Insurance Company (hereinafter, "Defendant"). *See* ECF No. 3. In its order, the Arizona District Court severed Plaintiff's claims against CorVel; those claims remain pending before that court. *Id.*

1

Presently before this Court is Plaintiff's Motion For Partial Lifting of Stay of Proceedings and to Re-Transfer This Case to the District of Arizona, filed on September 9, 2019. ECF No. 20. Defendant filed a Response on September 20, 2019. ECF No. 21. Plaintiff filed her Reply on September 27, 2019. ECF No. 16.

A hearing on Plaintiff's Motion was scheduled for December 13, 2019. After reviewing the parties' briefs, the Court finds that no hearing on the Motion is necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the Court will **GRANT** Plaintiff's Motion to partially lift the stay of proceedings which this Court previously entered on May 30, 2018 (ECF No. 16) in order to address the instant motion. Further, it is ordered that the Court will **DENY** Plaintiff's Motion to re-transfer this case to the District of Arizona.

## II. FACTUAL BACKGROUND

On May 14, 1979, Plaintiff suffered permanent injuries from an automobile accident in Michigan. ECF No. 1, PageID.2. Plaintiff was a Michigan resident at the time of her accident. *Id.* Plaintiff suffered a severe brain injury, causing her to be hospitalized for roughly six months immediately after the accident. *Id.* Plaintiff's family now provides her with 24-hour care. ECF No.1, PageID.3. She continues to receive No-Fault benefits under the terms of her father's Michigan No-Fault insurance policy with Defendant. ECF No. 21, PageID.593.

2

In 2004, Plaintiff sued Defendant in Oakland County Circuit Court, Case No. 05-067578, alleging breach of contract, fraud, and violations of the Consumer Protection Act. *Id.*; ECF No. 1, PageID.5. Plaintiff and Defendant (together, the "Parties") settled the Michigan state court lawsuit in May 2006 and entered into an agreement regarding Plaintiff's attendant care from 2006 through 2016. ECF No. 21, PageID.594. The Parties' agreement included a provision where the hourly rate for Plaintiff's attendant would be adjusted yearly based on the consumer price index. ECF No. 1, PageID.5.

Subsequent to the Parties' settlement, in 2010, Plaintiff and her family moved from Michigan to the Phoenix area in Arizona, where they continue to reside today. ECF No. 20, PageID.421. According to Defendant, its employees in Michigan continue to handle Plaintiff's claim. ECF No. 21, PageID.594.

In early 2016, Defendant hired CorVel to assist it in adjusting the amount of daily attendant care paid under the Michigan No-Fault policy and Michigan No-Fault Act. *Id.* CorVel scheduled Plaintiff for an insurance medical exam with Dr. Barry Hendlin in March 2016. ECF No. 1, PageID.6. CorVel asked Dr. Hendlin to evaluate Plaintiff's "need for attendant care" and "the hours per day required and the type of provider required." *Id.* According to Plaintiff, Defendant "actively ignored her Arizona treating physicians and intended to cut the hours and hourly rate,

through the use of CorVel and Dr. Hendlin to justify its decision." ECF No. 20, PageID.422.

Plaintiff instituted this action on May 25, 2017 in the Arizona District Court following Defendant's adjustment of her claim. *See* ECF No. 1. Defendant then moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction. *See* ECF No. 21, PageID.594. Plaintiff opposed the motion. *See* ECF No. 20-2, PageID.496. On March 27, 2018, the Arizona District Court granted Defendant's motion to dismiss, severed Plaintiff's claims against Defendant from her claims against CorVel, and ordered the transfer of Plaintiff's claims against Defendant to this Court. ECF No. 3, PageID.595.

Plaintiff did not seek reconsideration from the Arizona District Court's order. ECF No. 20, PageID.427. On May 8, 2018, she filed a petition for a writ of mandamus with the Ninth Circuit, challenging the Arizona District Court's determination that it lacks general personal jurisdiction over Defendant. *See* ECF No. 14-1. On May 17, 2018, Plaintiff filed an emergency motion in this Court for a stay of proceedings pending the outcome of her petition. ECF No. 14. This Court granted Plaintiff's emergency motion on May 30, 2019. ECF No. 16. This case was administratively closed on that same day.

On March 12, 2019, after holding oral argument, the Ninth Circuit denied Plaintiff's request. *See* ECF No. 20-2, PageID.590. The Ninth Circuit explained

4

that this case failed to present "extraordinary circumstances involving a grave miscarriage of justice." *Id.* (quoting *NBS Imaging Sys., Inc. v. U.S. Dist. Court*, 841 F.2d 297, 298 (9th Cir. 1988). Plaintiff sought reconsideration of the Ninth Circuit's decision en banc, but her request was denied on May 8, 2019. ECF No. 20, PageID.427. She did not seek certiorari from the Supreme Court of the United States. *Id.*

In her present Motion, Plaintiff asks this Court to partially lift the previously ordered stay of proceedings (ECF No. 16) and to re-transfer her case to the District of Arizona. *Id.* at PageID.438. She argues that this Court should find that the Arizona District Court committed "clear error" and that its decision "will [result in] manifest injustice." *Id.* at PageID.417. Defendant opposed Plaintiff's Motion on September 20, 2019, asserting that Plaintiff's attempt to "collaterally attack both the Arizona District Court and the Ninth Circuit Court of Appeals" should be denied. ECF No. 21, PageID.596. Plaintiff filed her Reply to Defendant's opposition on September 27, 2019. ECF No. 22.

### III. LAW & ANALYSIS

**A. Partial Lift Stay**

First, Plaintiff moves this Court to partially lift the stay of proceedings entered by this Court. On May 30, 2018, this Court stayed the proceedings and administratively closed the case while Plaintiff's petition for writ of mandamus

remained pending in the Ninth Circuit. ECF No. 16. The Ninth Circuit concluded that Plaintiff's petition did not warrant the "extraordinary use of [its] mandamus power." ECF No. 20-2, PageID.592. In light of the Ninth Circuit's decision to not grant relief, Plaintiff now wishes to reopen the case for this Court to re-transfer the claims against Defendant back to the District of Arizona. ECF No. 20, PageID.416; *see also* ECF No. 16, PageID.386.

Having reviewed the matter, including the Ninth Circuit's ruling from March 2019, the Court finds that the case should be reopened. Accordingly, the Court will grant Petitioner's Motion to Partially Lift the Stay [#20] and reopen the case.

### B. Re-Transfer

Second, Plaintiff moves this Court to re-transfer her claims against Defendant to the District of Arizona. This Court's re-transfer analysis must be guided by the law-of-the-case doctrine. This doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine is "meant to promote judicial efficiency …." *Omimex Energy Inc. v. Blohm*, No. 09-1158, 2010 WL 1531320, at *8 (6th Cir. 2010). The Sixth Circuit applies the law-of-the-case doctrine "with even greater force to transfer decisions" in order to avoid "the possibility of forcing a transferred case into perpetual litigation by playing

'jurisdictional ping-pong.'" *Moses v. Business Card Express, Inc.*, 929 F. 2d 1131, 1137 (6th Cir. 1991) (quoting *Christianson v. Colt*, 486 U.S. 800, 816 (1988)).

The Supreme Court warned that transferee courts could "threaten to send litigants into a vicious circle of litigation" should they feel "entirely free to revisit transfer decisions of a coordinate court." *Christianson*, 486 U.S. at 816. The Supreme Court explained, though, that a transferee has the power to revisit prior decisions of its own or of coordinate courts in "extraordinary circumstances such as where the initial decision as 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (*quoting Arizona*, 460 U.S. at 618 n. 8).

Here, Plaintiff asserts that this Court should deviate from the law of the case and re-transfer her claims against Defendant to the District of Arizona since "clear error" and "manifest injustice" are both present in the Arizona District Court's order. ECF No. 20. PageID.429 ("Both of these standards are met here…").

1. **The Arizona District Court Did Not Commit Clear Error**

According to Plaintiff, the Arizona District Court "improperly found that is [*sic*] lacked personal jurisdiction over [Defendant]." *Id.* Plaintiff purports that the Arizona District Court, therefore, "committed clear error" when it determined it had neither specific nor general jurisdiction over Defendant. *Id.*

The law of the case can be disregarded only when a court has a "clear conviction of error with respect to a point of law on which its previous decision was

predicated." *Moses*, 929 F. 2d at 1138. Thus, this Court should only re-transfer the instant action if it finds that the Arizona District Court was clearly wrong in ordering it transferred. For the reasons stated below, this Court does not find the Arizona District Court committed clear error.

Plaintiff argues that the Arizona District Court's order was improper based on the same grounds she objected to Defendant's initial motion to dismiss in the District of Arizona. Indeed, she asserts in her Motion that her arguments are set forth in attached Exhibits 3 and 8, which are copies of her Response to Defendant's Motion and her Motion for Certification under Rule 54(b), respectively. ECF No. 20, PageID.429. The Ninth Circuit therefore analyzed these same arguments when it reviewed and ultimately denied Plaintiff's request on appeal.

Plaintiff first asserts that the agency relationship between Defendant and CorVel subjects Defendant to specific jurisdiction in Arizona. CorVel, which did not contest personal jurisdiction in Arizona, allegedly acted as Defendant's agent when it was given authority to conduct a review of Plaintiff's medical needs in Arizona. *Id.* at PageID.430. Further, CorVel purportedly communicated directly with Plaintiff on Defendant's behalf. *Id.*

In its order, the Arizona District Court dismissed this argument since it was "unsupported by any evidence." ECF No. 3, PageID.44. The court explained that Plaintiff is "obligated to come forward with facts, by affidavit or otherwise,

8

supporting personal jurisdiction." *Id.* (citing *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). In the instant matter, Plaintiff fails to direct this Court to any additional evidence to support this argument. "A defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Plaintiff alleges that "it was CorVel's conduct on behalf of [Defendant] that provided the ammunition for the pre-determined outcome by [Defendant]. The District of Arizona clearly erred in not giving effect to the undisputed agency relationship and imputing CorVel's personal jurisdiction to [Defendant]." ECF No. 20, PageID.432. Without any additional evidence to demonstrate the purported conduct, this Court finds that Plaintiff's argument as to agency remains unsupported and therefore insufficient to demonstrate the Arizona District Court's personal jurisdiction over Defendant.

Plaintiff next contends that Defendant's direction of activities toward the Arizona forum, at an Arizona resident, subjects Defendant to specific jurisdiction in Arizona. According to Plaintiff, "there is no dispute that [Defendant] directed its activities into Arizona and towards an Arizona resident." *Id.* at PageID.433. Specifically, Plaintiff alleges that Defendant paid and eventually reduced her benefits in Arizona, including payments for attendant care and medical providers. *Id.* at PageID.433. This conduct purportedly "affected and caused damage in Arizona." *Id.*

9

The Arizona District Court determined that Plaintiff provided no evidence to show that Defendant had the requisite connections to Arizona; therefore, the court's exercise of personal jurisdiction could not comport with constitutional principles of due process. ECF No. 3, PageID.46. It explained that the only connection to Arizona which Plaintiff demonstrated was one "through Plaintiff"—specifically Plaintiff's decision to move to Arizona. *Id.* at PageID.45. According to the court, Plaintiff would have received the same decision from Defendant "regardless of the location of Plaintiff's residence." *Id.* Therefore, "Plaintiff [] provided no evidence to show that Defendant had the requisite connections to Arizona, let alone that those connections played a role in Defendant's decision to reduce Plaintiff's benefits payments." *Id.*

The Arizona District Court emphasized that the Supreme Court has explicitly held that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). In the instant matter, Plaintiff contests the Arizona District Court's use of *Walden*, arguing that the Supreme Court's decision is "easily explainable as the individual defendant [in *Walden*] had no tie to these plaintiffs except for a specific encounter in Georgia." ECF No. 22, PageID.617. Plaintiff asserts that there is no fortuity in her action against Defendant—unlike the

"single incident search and seizure" at issue in *Walden*—since she and Defendant are "tied together for life." *Id.* Plaintiff continues, "this Country has freedom of movement. A catastrophically injured individual is not prohibited from moving out of Michigan." *Id.*

Plaintiff fails to cite to any additional authority or evidence for her assertion that the instant action is "easily explainable" from *Walden* and that therefore the Arizona District Court erred in its reasoning. Plaintiff instead cites a Michigan Supreme Court case, *Proudfoot v. State Farm Mut. Ins. Co.*, in both her Motion and Reply for the proposition that she is entitled to "lifetime benefits under the contract regardless of where she lives." 673 N.W.2d 739, 742 (Mich. 2003).

Defendant argues that the Arizona District Court's reasoning on this issue was "plausible and not clearly erroneous." ECF No. 21, PageID.602. This Court agrees. In *Walden*, the Supreme Court explained that the "proper question" in a personal jurisdiction analysis is "not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290. Plaintiff incorrectly places emphasis on the harm and injury which Defendant allegedly caused her in Arizona. ECF No. 20, PageID.432; ECF No. 22, PageID.616. This Court agrees with the Arizona District Court's finding that Plaintiff provides no evidence to show that Defendant had sufficient connections to Arizona which played a role in its decision to reduce

Plaintiff's benefits plan. ECF No. 3, PageID.45. Accordingly, this Court cannot find that the Arizona District Court clearly erred in their analysis.

Finally, Plaintiff argues that Defendant is subject to general jurisdiction in Arizona and therefore, the Arizona District Court and the Ninth Circuit committed clear error in finding otherwise. Specifically, Plaintiff takes issue with the Arizona District Court's decision to not mention nor apply *Bohreer v. Erie Insurance Exchange*, 165 P.3d 186 (Ariz. Ct. App. 2007) in its general jurisdiction analysis. ECF No. 20, PageID.436.[1] According to Plaintiff, the court committed "clear error" by ignoring "Arizona law on consent in the insurance context." *Id.*

The Arizona District Court addressed Plaintiff's argument that Defendant is subject to general jurisdiction by consent in pages four and five of its order. *See* ECF No. 3, PageID41–42. There, the court denoted Plaintiff's assertion that "Defendant's 1958 appointment of power of attorney to the Arizona Director of Insurance in Arizona constitutes express consent to personal jurisdiction in Arizona. (Resp. at 6-7, Ex. B)." *Id.* at PageID.41. However, the court cited to *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604 (1990) for support that consent or presence under agreements such as the one Plaintiff cited to in the record is not enough to demonstrate that Defendant is "at home" in Arizona. *Id.* at

---

[1] Plaintiff also takes issue with the Ninth Circuit's failure to mention "its own precedent, that of the Supreme Court, or the law of Arizona." *See* ECF No. 20, PageID.436 n. 6.

PageID.42. Further, the court explained that a "categorical assertion of general jurisdiction where the corporation complies with a state's registration and appointment laws would essentially contradict *Daimler* and *BNSF*'s limitation of general jurisdiction to a corporation's place of incorporation, place of business, and *exceptional* cases where contacts with the forum state are substantial and of such nature to render it at home." *Id.* (emphasis in original).

Defendant cites to this section of the Arizona District Court's order as being "certainly reasonable and not clearly erroneous." ECF No. 21, PageID.604. This Court agrees. The Supreme Court's decisions in both *Daimler* and *BNSF*, which both postdate the *Bohreer* decision, have clarified that changes in technology of transportation and communication, along with the growth of interstate business, transform the former "strict territorial approach" to jurisdiction. ECF No. 3, PageID.42. The general jurisdiction analysis, therefore, now requires a court's inquiry to be "an appraisal of a corporation's activities in their entirety." *Id.* (quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017)). This Court recognizes the Arizona District Court's concern with Plaintiff's lack of evidence of Defendant's contacts in Arizona. *See* ECF No. 3, PageID.43. Plaintiff has failed to include any additional evidence in her instant Motion or Reply to support her argument that Arizona has general jurisdiction over Defendant. Therefore, this Court is unable to find the Arizona District Court's determination that it had no general jurisdiction

over Defendant, as well as the Ninth Circuit's decision to deny mandamus, to be clearly erroneous.

Accordingly, this Court finds that the deficiencies which Plaintiff alleges in her Motion do not rise to the level of clear error. Thus, the Court will not disturb the law of the case on this basis.

### 2. Manifest Injustice Will Not Result By Precluding Re-Transfer

Plaintiff asserts that "manifest injustice" will result should this Court decline to re-transfer her claims. ECF No. 20, PageID.436. Specifically, Plaintiff explains that she will suffer injustice by being forced to conduct two separate cases on the same set of facts in both Michigan and Arizona. *Id.* at PageID.437. According to Plaintiff, the "hardship, time, expense, and delay are not correctable upon appeal after the conclusion of the cases." *Id.*

This Court should avoid revisiting prior decisions of its own or of a coordinate court unless the initial decision "would work a manifest injustice." *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (internal citation omitted). The Sixth Circuit has explained that "manifest injustice" is not meant to allow a disappointed litigant to "correct what has—in hindsight—turned out to be a poor strategic decision." *Estate of Romain v. City of Grosse Point Farms*, No. 14-cv-12289, 2018 WL 3100907, at *2 (E.D. Mich. June 25, 2018) (quoting *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804 (6th Cir. 1999)). The Sixth

Circuit has also acknowledged that its case law does not offer "clear guidance as to what qualifies as 'manifest injustice,' but the plain meaning of those words is instructive." *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 Fed. Appx. 319, 330 (6th Cir. 2014). Manifest injustice requires "more than a clear error"; rather, injustice "must also result." *Id.* For the reasons stated below, this Court does not find the Arizona District Court's order "would work manifest injustice."

Plaintiff does not cite to any case law in her Motion that supports her argument that manifest injustice will result should this Court decline to re-transfer her claim. Plaintiff instead asserts that she will suffer injustice by being forced to conduct two separate cases in both Michigan and Arizona. *See* ECF No. 20, PageID.437; *see also* ECF No. 22, PageID.621 ("To suggest that forcing a catastrophically injured individual and her care providers to engage in such antics is not manifestly unjust reflects a deficiency in recognition of what justice means."). She explains that there is a "grave risk of inconsistent results, both factually and legally" in litigating her claims against two separate defendants in two different districts. ECF No. 20, PageID.437. Further, Plaintiff purports that the Arizona District Court's decision is "manifestly unjust because it disregards Arizona law that protects Arizona citizens [like] Plaintiff." *Id.* at PageID.438.

Defendant contends that the "only potential manifest injustice in this case would be if Plaintiff were permitted to engage in forum shopping…." ECF No. 21,

15

PageID.611. Defendant alleges that Plaintiff, by relocating to Arizona after the accident, purposefully brought her claims in Arizona in an attempt to hold Defendant liable "for a tort remedy not available in Michigan and not at all contemplated by the parties at the time of contracting." *Id.* In her Reply, Plaintiff purports that Defendant's intent "was to seek to deprive an Arizona resident of the protections of her own state's laws" when it moved to transfer Plaintiff's claims from Arizona to Michigan. ECF No. 22, PageID.621.

Without any cited case law for the proposition that the Arizona District Court's order is "manifestly unjust," this Court is hesitant to supplant the law of the case in the instant matter. As explained above, a transferee court such as this one should apply the law-of-the-case doctrine "with even greater force to transfer decisions" in order to avoid forcing a transferred case into "perpetual litigation." *Moses*, 929 F. 2d at 1137 (quoting *Christianson v. Colt*, 486 U.S. 800, 816 (1988)).

This Court denotes that Plaintiff consented to having the Arizona District Court sever and keep her claims against Defendant CorVel within Arizona in her initial Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. *See* ECF No. 20-2, PageID.513. In a footnote to her Response, Plaintiff asserted that "[e]ven if this Court [Arizona District Court] found no jurisdiction over [Defendant], then another, more appropriate option would be to sever the claims against CorVel and keep them here (if not transfer the entire case to Illinois)." *Id.*

While it is true Plaintiff requested, in the alternative, for her claims against Defendant to be transferred to the Northern District of Illinois, this footnote demonstrates that Plaintiff was on notice and in agreement that her case could be severed in two different districts. This Court therefore questions the genuineness of Plaintiff's argument that she will "suffer injustice by being forced to conduct two separate cases." ECF No. 20, PageID.437.

Accordingly, the Court finds that Plaintiff's motion to re-transfer the case to the District of Arizona must be denied.

### IV. CONCLUSION

For the reasons articulated above, the Court will **GRANT** Plaintiff's Motion to partially lift the stay of proceedings which this Court previously entered on May 30, 2018. Further, the Court will **DENY** Plaintiff's Motion to re-transfer this case to the District of Arizona.

IT IS SO ORDERED.

Dated: December 16, 2019

/s/Gershwin A. Drain
HON. GERSWHIN A. DRAIN
United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 16, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager