UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMON P. HUMPHRIES,

Plaintiff,

v.

ALLSTATE INSURANCE CO.,

Defendant.

Case No. 18-cv-11006

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT [#32]

### I. INTRODUCTION

On May 25, 2017, Plaintiff Angela Humphries[1] ("Plaintiff") filed the instant action against Defendants Allstate Insurance Company and CorVel Corporation ("CorVel"), alleging breach of contract, insurance bad faith, and aiding and abetting. *See* ECF No. 1.  On August 21, 2017, Plaintiff filed her First Amended Complaint ("FAC").  *See* ECF No. 2.  On March 27, 2018, Plaintiff's action was transferred to this Court after the United States District Court for the District of Arizona ("Arizona District Court") determined that it did not have personal jurisdiction over Defendant

---

[1] Plaintiff Angela Humphries brings this action through her legal guardian and conservator, Damon P. Humphries.  The Court will refer to Ms. Humphries as "Plaintiff" through its Order.

Allstate Insurance Company (hereinafter, "Defendant"). *See* ECF No. 3. In its order, the Arizona District Court severed Plaintiff's claims against CorVel; those claims remain pending before that court. *Id.*

Presently before this Court is Defendant's Motion for Partial Judgment on the Pleadings as to Count II of Plaintiff's First Amended Complaint, filed on January 28, 2020. ECF No. 32. Plaintiff filed a Response on April 10, 2020. ECF No. 40. Defendant filed its Reply on May 4, 2020. ECF No. 41. A hearing on Defendant's Motion was held on June 9, 2020. For the reasons set forth below, the Court will **GRANT** Defendant's Motion for Partial Judgment on the Pleadings as to Count II of Plaintiff's First Amended Complaint [#32].

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 1979, Plaintiff suffered permanent injuries from an automobile accident in Michigan. ECF No. 1, PageID.2. Plaintiff was a Michigan resident at the time of the accident. *Id.* She suffered a severe brain injury, causing her to be hospitalized for roughly six months immediately after the accident. *Id.* Plaintiff's family now provides her with 24-hour care. ECF No.1, PageID.3. She continues to receive No-Fault benefits under the terms of her father's Michigan No-Fault insurance policy with Defendant. ECF No. 21, PageID.593.

In 2004, Plaintiff sued Defendant in Oakland County Circuit Court, Case No. 05-067578, alleging breach of contract, fraud, and violations of the Consumer

Protection Act. *Id.*; ECF No. 1, PageID.5. Plaintiff and Defendant (together, the "Parties") settled the Michigan state court lawsuit in May 2006 and entered into an agreement regarding Plaintiff's attendant care from 2006 through 2016. ECF No. 21, PageID.594. The Parties' agreement included a provision where the hourly rate for Plaintiff's attendant would be adjusted yearly based on the consumer price index. ECF No. 1, PageID.5. Subsequent to the Parties' settlement, in 2010, Plaintiff and her family moved from Michigan to the Phoenix area in Arizona, where they continue to reside today. ECF No. 20, PageID.421. According to Defendant, its employees in Michigan continue to handle Plaintiff's claim. ECF No. 21, PageID.594.

In early 2016, Defendant hired CorVel to assist it in adjusting the amount of daily attendant care paid under the Michigan No-Fault policy and Michigan No-Fault Act. ECF No. 2, PageID.25. CorVel scheduled Plaintiff for an insurance medical exam with Dr. Barry Hendin in March 2016. *Id.* CorVel asked Dr. Hendin to evaluate Plaintiff's "need for attendant care" and "the hours per day required and the type of provider required." *Id.* On April 4, 2016, Dr. Hendin examined Plaintiff. *Id.* at PageID.26. On June 15, 2016, Plaintiff purports that Dr. Hendin wrote to Defendant, stating that "the level of care is 'home health aide and would require no more than 8 hours per day of service.'" *Id.*

An adjuster in Defendant's Farmington Hills, Michigan office allegedly sent a letter to Plaintiff on June 28, 2016, notifying her that Defendant was changing the amount it would pay for attendant care under the Michigan Policy.  ECF No. 32, PageID.678.  Dr. Marzulo, who purportedly has known Plaintiff for over five years "with several evaluations," subsequently wrote to Defendant, expressing his opposition to Dr. Hendin's conclusions.  ECF No. 2, PageID.27.  Dr. Hendin disagreed with Dr. Marzulo's determination.  *Id.*  On August 29, 2016, Defendant purportedly wrote a letter to Plaintiff reiterating that it was changing the amount it would pay for her care.  *Id.* at PageID.28.

Plaintiff instituted this action on May 25, 2017 in the Arizona District Court following Defendant's adjustment of her claim.  *See* ECF No. 1.  In Count II of Plaintiff's FAC, Plaintiff alleges a claim of "bad faith."[2]  ECF No. 2.  She purports that Defendant owed her "an implied duty of good faith and fair dealing in the handling of her insurance claim."  *Id.* at PageID.30.  Plaintiff alleges that Defendant "committed bad faith and breached the implied covenant of good faith and fair dealing" by not paying all of her requested personal protection insurance ("PIP") benefits.  *Id.* at PageID.31.  In her Complaint, Plaintiff lists nine examples of Defendant's alleged "intentional and unreasonable conduct" and disregard of her

---

[2] Count II is the subject of Defendant's instant Motion.  The Court will thus focus its discussion and analysis on this claim.

rights.  *Id.* at PageID.31–32.  Based on her allegations, Plaintiff claims entitlement to compensatory damages for "personal injuries, mental and emotional distress and anxiety, loss of security, and other incidental damages" and also seeks "[p]unitive and exemplary damages."  *Id.* at PageID.32.

Defendant then moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction.  *See* ECF No. 32-4.  Plaintiff opposed the motion.  *See* ECF No. 32-5. In her Response, Plaintiff requested that, if the Arizona District Court found no jurisdiction, the court transfer those claims under 28 U.S.C. § 1631.[3]  *Id.* at PageID.756 ("[D]ismissal is too harsh a remedy").  In its Reply, Defendant asked the Court to transfer Plaintiff's claims to this District because "nearly all" the relevant factors "weigh in favor of Michigan."  ECF No. 32-6, PageID.777.  On March 27, 2018, the Arizona District Court granted Defendant's motion to dismiss; severed Plaintiff's claims against Defendant from her claims against CorVel; and ordered the transfer of Plaintiff's claims against Defendant to this Court.  *See* ECF No. 32-7.  In its Order, the Arizona District Court determined that "it is beyond dispute that the Eastern District of Michigan is the most appropriate venue to hear Plaintiff's claims against Defendant."  *Id.* at PageID.792 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)).

---

[3] In her Response, Plaintiff suggested that "it would be proper to transfer the matter to the Northern District of Illinois.  ECF No. 32-5, PageID.756.

After Plaintiff filed a petition for a writ of mandamus with the Ninth Circuit, ECF No. 14-1, she filed an emergency motion in this Court for a stay of proceedings pending the outcome of her petition.  ECF No. 14.  This Court granted Plaintiff's emergency motion on May 30, 2019.  ECF No. 16.  This case was administratively closed on that same day.

On March 12, 2019, the Ninth Circuit denied Plaintiff's petition.[4]  *See* ECF No. 20-2, PageID.590.  Plaintiff then filed a Motion for Partial Lifting of Stay Proceedings and to Re-Transfer This Case to the District of Arizona in this Court. ECF No. 20.  On December 16, 2019, this Court issued an Opinion and Order granting Plaintiff's Motion to partially lift the stay of proceedings and denying Plaintiff's Motion to re-transfer this case to the District of Arizona.  ECF No. 25.

In its present Motion, Defendant moves for judgment on the pleadings as to Count II of Plaintiff's FAC under Federal Rule of Civil Procedure 12(c).  ECF No. 32, PageID.680.  Defendant argues that Michigan law governs this case.  *Id.* at PageID.676.  Under Michigan law, Defendant contends that Plaintiff is limited to "pursuing her breach of contract claim, and [that] her potential damages are limited to those available under contract jurisprudence and Michigan's No-Fault Act."  *Id.* at PageID.673–74.  Plaintiff opposed Defendant's Motion on April 10, 2020,

---

[4] Plaintiff sought reconsideration of the Ninth Circuit's decision en banc, but her request was denied on May 8, 2019.  ECF No. 20, PageID.427.

asserting that the Court should find Arizona tort law applicable and accordingly deny the instant motion.  ECF No. 40, PageID.859.  Defendant filed its Reply to Plaintiff's opposition on May 4, 2020.  ECF No. 41.

### III. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010) (citation omitted).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks omitted)).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order

to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When deciding a 12(c) motion for judgment on the pleadings, matters outside the pleadings ordinarily may not be considered unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). A court may, however, examine "the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion [for judgment on the pleadings] so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (internal quotation marks omitted)).

## B. Choice of Law

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941);

*Cole v. Miletti*, 133 F.3d 433, 437 (6th Cir. 1998).  If a case has been transferred for lack of jurisdiction under 28 U.S.C. § 1631, the action "shall proceed as if it had been filed in or noticed for the court to which it is transferred."  28 U.S.C. § 1631; *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015).  Here, the Arizona District Court found that it was "in the interest of justice under 28 U.S.C. § 1631 to transfer Plaintiff's claims against Defendant to [this Court]."  ECF No. 32-7, PageID.792.  Accordingly, Michigan's choice-of-law rules govern this Court's decision.

## IV. ANALYSIS

### A. Michigan Law Governs Plaintiff's Action

The Court must first determine whether Plaintiff's cause of action sounds in contract or tort before applying choice-of-law principles.  "In Michigan there is a clear distinction between the analysis a court must conduct when attempting to resolve a tort conflict as opposed to a contract conflict."  *Liberty Mut. Fire Ins. Co. v. Holka*, 984 F. Supp. 2d 688, 694 (E.D. Mich. 2013).  Once the claim at issue has been classified appropriately, the court can apply the relevant choice-of-law principles to determine the applicable substantive law.

Here, Defendant argues that Plaintiff's claim "lies solely in contract[.]"  ECF No. 41, PageID.888.  At the hearing, Defendant explained that Count II specifically concerns the performance of the parties' contract.  Defendant thus asserts that the

choice-of-law framework for tort actions, set forth in *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 2013), does not apply. *Id.* at PageID.889. In its Motion, Defendant places great emphasis on *Magda v. Auto. Club Ins. Assoc.*, No. 14-cv-12144, 2015 WL 13036945 (E.D. Mich. Apr. 28, 2015) for its choice-of-law analysis.[5] Defendant asserts that "[t]he *Magda* decision is consistent with Michigan's 'policy-centered approach' to the choice-of-law analysis, which focuses on preserving state policies." ECF No. 32, PageID.684 (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698 (Mich. 1995)).

The Court denotes, however, that the district court in *Magda* relied upon the tort standard in evaluating an issue "sound in contract law." *Magda*, 2015 WL 13036945, at *3 n.2. Indeed, the district court cited to *Standard Fire Ins. Co. v. Ford Motor Co.*, a Sixth Circuit decision, which adopted the two-step test outlined in *Sutherland* for Michigan's choice-of-law framework in tort actions. *Id.* at *4. Moreover, this Court emphasizes the *Magda* court's explanatory footnote, which

_____

[5] At the hearing, Defendant conceded that the *Magda* decision is not strong precedent given that the plaintiff sought reconsideration and leave to amend his complaint, in part, to allege factually that the claims handling standards in Michigan and the foreign state, Florida, were substantially identical and therefore negating the factual premise for the court to apply Michigan law. *See also* ECF No. 40, PageID.851. The district court ultimately granted the plaintiff's motion to amend and denied the motion to reconsider as moot. *Id.* Nevertheless, Defendant argued at the hearing that the district court's analysis in *Magda*—particularly its finding that there is an "interest in a single standard of care regarding insurance contracts entered into by Michigan residents in Michigan"—is helpful for the instant matter. *See Magda v. Auto. Club Ins. Assoc.*, 2015 WL 13036945, at *5.

incorrectly equates the choice-of-law analyses for contract and tort actions: "[i]n Michigan, courts evaluating a choice of law problem involving either tort or contract engage in interest analysis." *Id.* (citing *Sutherland*, 562 N.W.2d 466; *Chrysler Corp.,* 528 N.W.2d 698). This Court reiterates that there is a "clear distinction" between the analysis a court must conduct when attempting to resolve a tort conflict as opposed to a contract conflict. *Holka*, 984 F. Supp. 2d at 694.

Defendant also cites to *In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. 793 (E.D. Mich. 1989) in its Motion, asserting that the district court analyzed a "similar choice-of-law issue." ECF No. 32, PageID.685. In *In re Disaster*, the district court analyzed choice-of-law principles in four states for a tort action brought in the multidistrict context. The district court cited to *Olmstead v. Anderson*, 400 N.W.2d 292 (Mich. 1987)—a Supreme Court of Michigan decision which predated *Sutherland* in providing the analytical framework for tort choice-of-law issues—in its discussion of Michigan choice-of-law rules. *In re Disaster*, 750 F. Supp. at 797. This decision, similar to *Magda*, exclusively relies on Michigan's choice-of-law analysis for a tort action. Moreover, the Court emphasizes that while Defendant asserts that Plaintiff's action is one "solely in contract," ECF No. 41, PageID.888, Defendant consistently cites to Michigan precedent invoking choice-of-law principles for a tort conflict. *See, e.g.*, ECF No. 32, PageID.682, 686 (citing *Sutherland*, 562 N.W.2d at 471, 472).

Plaintiff contends that her claim is one "for the tort of insurance bad faith," which is recognized under Arizona law where she initially filed her action. ECF No. 40, PageID.835, 836, 837. She thus maintains that the tort test should apply for the Court's choice-of-law analysis. *Id.* at PageID.837–38. At the hearing, Plaintiff explained that should the Court analyze Count II as a contract claim, the Court would incorrectly presuppose that Michigan's substantive law applies.

In her Response, Plaintiff cites to four Michigan Court of Appeals cases as examples for the interest-weighing approach in tort choice-of-law issues.[6] *Id.* at PageID.838–41. In these cases, the courts concluded that foreign law should govern because the foreign state's interests were superior to Michigan's interests. Indeed, the Sixth Circuit has recognized that "interest weighing is required [in a court's choice-of-law analysis] because a foreign state undeniably has an interest in having its law applied to an action filed by one of its citizens stemming from an injury sustained there." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 695 (6th Cir. 2013).

Here, although the present action generally stems from a breach of contract, the Court agrees with Plaintiff's classification of Count II as one specifically of tort.

---

[6] *Hampshire v. Ford Motor Co.*, 399 N.W.2d 36 (Mich. Ct. App. 1986); *Farrell v. Ford Motor Co.*, 501 N.W.2d 567 (Mich. Ct. App. 1993); *Hall v. General Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998); *Mitchell v. McNeilus Truck & Mfg., Inc.*, No. 304124, 2012 WL 5233630 (Mich. Ct. App. Oct. 23, 2012).

In Count II, Plaintiff alleges that Defendant owes her an "implied duty of good faith and fair dealing in the handling of her insurance claim."  ECF No. 2, PageID.30. She purports that Defendant "committed bad faith and breached the implied covenant of good faith and fair dealing by engaging in intentional and unreasonable conduct and consciously disregarded [her] rights[.]"  *Id.* at PageID.30.  The Court reiterates that Plaintiff filed this claim in the Arizona District Court before her action was transferred to this Court.[7]

In Michigan, a claim for breach of the covenant of good faith and fair dealing sounds in tort in a limited fashion.  Specifically, Michigan law recognizes a tort claim only when a plaintiff's complaint alleges that "the breach of duties existing independent of and apart from" the contract of insurance.  *Soc'y of St. Vincent De Paul v. Mt. Hawley Ins. Co.*, 49 F. Supp. 2d 1011, 1019 (E.D. Mich. 1999) (citing *Hearn v. Rickenbacker*, 400 N.W.2d 90, 94 (Mich. 1987)).  "[I]f a relationship exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not."  *Haas v. Montgomery Ward and Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987) (citation and quotation marks omitted).  Accordingly, so long as a plaintiff's bad faith allegations can be separated from a defendant's

---

[7] The Court takes judicial notice that Michigan law does not recognize an independent tort based upon a bad faith breach of contract. *See Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1111 (E.D. Mich. Apr. 7, 1995) (citing *Kewin v. Mass. Mutual Life Ins. Co.*, 295 N.W.2d 50, 56 (Mich. 1980).

contractual duties, a claim for bad faith sounds in tort under Michigan law. For choice-of-law purposes, when considering a claim for bad faith, Michigan courts have applied tort choice-of-law principles. *See, e.g.*, *Wausau Underwriters Ins. Co. v. Reliable Transp. Specialists, Inc.*, No. 15-cv-12954, 2016 WL 4158387, at *3 (E.D. Mich. Aug. 5, 2016) (analyzing tort choice-of-law principles for a claim alleging that an insurer committed bad faith against its insured by failing to settle within the policy limits).

The Court will thus analyze Plaintiff's bad faith claim (Count II) in the context of Michigan's tort choice of law analysis to determine whether Michigan or Arizona law applies.

Under Michigan's choice-of-law rules concerning tort claims, there is a presumption that Michigan law applies unless there is a "rational reason" to displace it. *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (citing *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 2013)). In order to determine whether a "rational reason" exists to displace Michigan law, Michigan courts conduct a two-step analysis:

> First, [the court] must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, [the court] must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Standard Fire Ins. Co.*, 723 F.3d at 693 (citation omitted).

Accordingly, federal courts sitting in Michigan "use another state's law [only] where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. General Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998). "This 'interests analysis' is to be distinguished from the traditional (and discarded) approach in Michigan, known as the doctrine of *lex loci delicti*, which dictated that the law to be applied was the law of the state where the tort occurred." *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017) (citing *Sutherland*, 562 N.W.2d at 470). In order to determine whether a "rational reason" for displacing Michigan law exists, the Court must first determine if Arizona has an interest in the instant action. *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 2013). For the reasons that follow, the Court concludes that it does.

Plaintiff argues that her injury occurred in Arizona and therefore Arizona is the place of the wrong. ECF No. 40, PageID.842–44. She explains that she received her care in Arizona upon moving there in 2010. Defendant made payments to her in Arizona and subsequently decreased payments made to her in Arizona. *Id.* at PageID.843; *see also* ECF No. 2, PageID.27. Plaintiff purports that the damages "both economic and non-economic," occurred in Arizona—not Michigan. ECF No. 40, PageID.843.

In its Reply, Defendant argues that Arizona does not have a significant interest in having its law applied in the instant case.  ECF No. 41, PageID.892.  Defendant emphasizes that the automobile accident occurred in Michigan.  *Id.* at PageID.893.  Moreover, it asserts that the "*only* connection that this case has to the State of Arizona is that Plaintiff moved to Arizona 30+ years after the motor vehicle accident."  *Id.* at PageID.890.  Defendant cites to *Hall v. General Motors Corp.* for the proposition that the Michigan Court of Appeals rejected the notion that a plaintiff can change the law to be applied to her or his claim by moving to another forum after an automobile accident.  *Id.* (citing *Hall v. General Motors Corp.*, 582 N.W.2d 866, 870–71 (Mich. Ct. App. 1998)).

In *Hall*, the Michigan Court of Appeals analyzed whether plaintiff's residency at the time of injury or at the time of filing her personal injury, products liability claim was controlling.  The court concluded that for Michigan's choice-of-law analysis, a plaintiff's residency is determined as of the date of the injury, not as of the date of the filing of a lawsuit.  *Id.* at 871.  "In other words, where as here, a plaintiff is not a resident of Michigan at the time an injury occurs, but becomes a Michigan resident before filing a lawsuit in Michigan, the plaintiff's residency at the time of injury controls."  *Id.*  Defendant asserts that *Hall*'s rationale applies to and controls the instant matter.  ECF No. 41, PageID.894.  It argues that Plaintiff cannot

"unilaterally thrust Arizona law onto [it] simply by moving to Arizona after the accident." *Id.*

The Court denotes, however, that Plaintiff's injury from the instant tort of bad faith—which she allegedly suffered due to Defendant's engagement in "intentional and unreasonable conduct and conscious[] disregard" of her rights, ECF No. 2, PageID.31—occurred while she was in Arizona. Indeed, Plaintiff received a letter from Defendant in June 2016 that her benefits were being reduced as of July 1, 2016. *Id.* at PageID.27. Plaintiff then filed suit in the Arizona District Court. Unlike the plaintiff in *Hall*, Plaintiff here suffered an injury in Arizona—separate from the initial motor vehicle accident—and subsequently filed suit in Arizona. Under Michigan law, the place of the wrong is the place where the injury was sustained; "the place where the last event necessary to create liability occurred." *Standard Fire*, 723 F.3d at 698 (citing *Sutherland*, 562 N.W.2d at 468); *Sexton v. Ryder Truck Rental, Inc.*, 320 N.W.2d 843, 848 (Mich. 1982)). Moreover, the Sixth Circuit has determined that the place where the injury occurred is a "significant factor" in its choice-of-law analysis. *See id.* (discussing Michigan Court of Appeals decisions).

The Michigan Supreme Court has indicated that a foreign state has an interest in having its law applied when the case involves citizens of the foreign state who were injured in that state. *See Radeljak v. Daimlerchrysler Corp.*, 719 N.W.2d 40, 46 (Mich. 2006); *see also Burney v. P V Holding Corp.*, 553 N.W.2d 657, 660

(Mich. Ct. App. 1996) ("Alabama has an interest in having its law applied because one of the parties is a citizen of the state where the wrong occurred ... The accident occurred in Alabama, and the injury state always has an interest in conduct within its borders."). The Sixth Circuit has likewise held: "[A] foreign state undeniably has an interest in having its law applied to an action filed by one of its citizens stemming from injury sustained there." *Standard Fire Ins. Co. v*, 723 F.3d at 695 (applying the *Sutherland* analysis).

Accordingly, Arizona has an interest in having its law applied to the instant matter, where one of its residents allegedly suffered an injury within its state. However, Defendant argues that pursuant to *Sutherland*, 562 N.W.2d at 472, Arizona law cannot be applied in this case because it would violate its due process rights. "[I]n order for a court to choose a state's law, '[the] State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Id.* (quoting *Allstate Ins. V. Hague*, 449 U.S. 302, 313 (1981) (quotations and footnote omitted). Defendant asserts that the only contact Arizona has with this action is "that [P]laintiff chose to move to Arizona and was living there when Allstate's Michigan claims adjusters made the decision to change attendant care payments payable under the Michigan No Fault Act." ECF No. 32, PageID.686.

Plaintiff contests Defendant's due process argument, asserting that while the legal principle set forth in *Sutherland*—that residence without nothing more is insufficient to support the choice of a state's law—"it has no relevance" to her action. ECF No. 40, PageID.842. Plaintiff, citing to *Standard Fire Ins. Co. v. Ford Motor Co.*, asserts that "residency plus injury is determinative." *Id.* She therefore emphasizes that she is an Arizona resident and that she allegedly suffered her injury in Arizona. *Id.*

While the Court acknowledges that the instant action differs from *Sutherland* in that Plaintiff's residence is not the sole connection to the foreign state,[8] the Court disagrees with Plaintiff's reliance on *Standard Fire* and the Michigan Court of Appeals decisions cited therein. These products liability actions—brought by non-resident plaintiffs against a Michigan automobile manufacturer—resulted in applications of the foreign state's law; the presumption in favor of *lex fori* was thus overcome. However, none of these decisions involved actions which were transferred from another district court which previously determined that it had no personal jurisdiction over the defendants. The Court finds this distinction determinative.

Plaintiff initially filed suit against Defendant in Arizona; however, her claims against Defendant were dismissed for lack of personal jurisdiction. ECF No. 3. In

---

[8] The Court has determined that Plaintiff's injury occurred in Arizona.

its Order, the Arizona District Court determined that Plaintiff was unable to demonstrate "that Defendant has the requisite contacts with Arizona *in this case* and that Plaintiff's claim is *related to those contacts*." *Id.* at PageID.45 (citation omitted) (emphasis in original). Further, the Arizona District Court emphasized that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citing *Walden v, Fiore*, 134 S.Ct. 1115, 1119 (2014)). It concluded that Plaintiff would have received the same decision [regarding her PIP benefits] from Defendant regardless of her residence. *Id.* "In other words, the only connection that Plaintiff has shown Defendant has with Arizona in this case is through Plaintiff. This is insufficient." *Id.* (citation omitted).

Plaintiff did not seek reconsideration from the Arizona District Court's order. ECF No. 20, PageID.427. On May 8, 2018, she filed a petition for a writ of mandamus with the Ninth Circuit, challenging the Arizona District Court's determination that it lacks general personal jurisdiction over Defendant. *See* ECF No. 14-1. On March 12, 2019, after holding oral argument, the Ninth Circuit denied Plaintiff's request. *See* ECF No. 20-2, PageID.590. The Ninth Circuit explained that this case failed to present "extraordinary circumstances involving a grave miscarriage of justice." *Id.* (quoting *NBS Imaging Sys., Inc. v. U.S. Dist. Court*, 841 F.2d 297, 298 (9th Cir. 1988).

On December 16, 2019, this Court issued an Opinion and Order denying Plaintiff's Motion to re-transfer this case to the District of Arizona.  ECF No. 25. This Court "recognize[d] the Arizona District Court's concern with Plaintiff's lack of evidence of Defendant's contacts in Arizona."  *Id.* at PageID.637.  It concluded that neither the Arizona District Court's determination that it had no general jurisdiction over Defendant nor the Ninth Circuit's decision to deny mandamus were "clearly erroneous."  *Id.* at PageID.638.

The Michigan Supreme Court has noted that "[t]he contacts' required for choice of law purposes is similar to the 'minimum contacts' required for jurisdictional purposes."  *Sutherland*, 562 N.W.2d at 472 n.22.  Indeed, the court explained "[i]t would make little sense to say that state X does not have enough contacts to exercise jurisdiction, but yet allow state Y to apply state X's law."  *Id.* The fact that Defendant's contacts were insufficient for jurisdiction in Arizona would indicate the lack of significant contacts for choice-of-law purposes.  *See also Hastings v. Bird*, No. 17-cv-162, 2018 WL 3728932, at *4 (W.D. Mich. Jul. 18, 2018) (finding that the determination that defendants' contacts with the foreign law, Illinois, were insufficient for jurisdiction in the foreign state indicated a lack of significant contacts for choice-of-law purposes).

Based on the procedural circumstances presented in this action, the Court is not persuaded that Arizona law can apply to Count II without offending Defendant's

due process rights.  Even if this Court determined otherwise, however, the Court finds that other factors support the application of Michigan law.

In the second step of the *Sutherland* analysis, courts must "determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 2013).  While this balancing approach "frequently favors using [Michigan law], Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter[.]" *Thompson I.G.., LLC v. Edgetech I.G. Inc.*, 590 F. App'x 532, 539 (6th Cir. 2014) (quoting *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998)). The Sixth Circuit has identified the following nonexhaustive list of factors to consider under this analysis:

> (1) whether the injury occurred in the state whose law a party seeks to apply; (2) the extent to which the relevant commercial activity took place in the state whose law a party seeks to apply; (3) whether a party seeks to defeat the application of the law of its home state; (4) the forum state's interest in applying its own law; (5) whether the law of the foreign state would entitle the party to greater relief than the law of the party's home state; and (6) whether courts in the foreign state whose law the party seeks to apply would apply Michigan law.

*Hastings v. Baird*, No. 17-cv-162, 2018 WL 3728932, at *3 (W.D. Mich. July 18, 2018) (quoting *Thompson*, 590 F. App'x at 539–40)).  For the reasons that follow, a majority of the aforementioned factors weigh in Michigan's favor.

As to the first factor, Plaintiff argues that her injury occurred in Arizona.  ECF No. 40, PageID.843.  As discussed in the preceding section, the Court agrees.  In her Complaint, Plaintiff alleges that Defendant's actions pertaining to her reduced care and payments for attendant care caused an injury in Arizona.  *See* ECF No. 2, PageID.32.  "'[There] is a local interest in having localized controversies decided at home.'"  *Thompson*, 590 F. App'x at 540 (citing *Radeljak v. Daimlerchrysler Corp.*, 719 N.W.2d 40, 46 (Mich. 2006) (internal citation omitted)).  Given that Plaintiff's injury occurred in Arizona, this first factor thus weighs in Arizona's favor.

The second factor assesses the extent to which the relevant commercial activity took place in the state whose law a party seeks to apply.  *Thompson*, 590 F. App'x at 540.  In her Response, Plaintiff argues that this factor weighs in Arizona's favor in light of Defendant's activity in the state, including Defendant's engagement with CorVel's Arizona office to aid it in its "efforts to decrease benefits" and Defendant's decision, through CorVel, to have Dr. Hendin examine Plaintiff and provide opinions. ECF No. 40, PageID.844.  Plaintiff also points to her own treating physician in Arizona and the care which she received in Arizona leading up to the instant action.  *Id.*  She argues that the activity which took place in Michigan was "minimal by comparison." *Id.*

As discussed above in analyzing Defendant's due process argument, the Court questions Defendant's relevant commercial activity in Arizona.  The Court reiterates

that the Arizona District Court determined that Plaintiff was unable to demonstrate that Defendant had the requisite contacts with Arizona to establish personal jurisdiction. ECF No. 3, PageID.45 (citation omitted) (emphasis in original). In light of the Arizona District Court's ruling on jurisdiction and the current pleadings, the Court finds that this second factor thus weighs in Michigan's favor.

The third factor determines whether a party seeks to defeat the application of the law of its home state. *Thompson*, 590 F. App'x at 540. Here, no party seeks to defeat the application of its home state law. Indeed, Plaintiff seeks to apply her home state law: Arizona. ECF No. 40, PageID.845. Defendant's home states are Delaware, where it is incorporated, and Illinois, where it has its principal place of business. *See* ECF No. 3, PageID.40. Neither state is at issue in the Court's choice-of-law analysis. Given that neither party seeks to defeat the application of its home state law, this factor does not weigh in any state's favor.

The fourth factor evaluates the forum state's interest in applying its own law. *Thompson*, 590 F. App'x at 540. Plaintiff asserts that Michigan has "at best a minimal interest in the application of its own law[.]" ECF No. 40, PageID.845. She cites to a Michigan Supreme Court decision, *Cooper v. Auto Club Ins. Ass'n*, to contest Defendant's argument that Michigan has a "strong interest" in the instant action. *Id.* at PageID.850. Plaintiff argues that "[t]ort claims are allowed in Michigan in the No Fault context; No Fault insurers have duties beyond the No Fault

Act, the No Fault Act is not an exclusive remedy statute, and any ill-effects to the No Fault system because of tort claims are not of any interest of Michigan as they would have occurred and are allowable under Michigan law already." *Id.*

In *Cooper*, the Michigan Supreme Court determined that a fraud claim is "clearly distinct" from a no-fault claim.  751 N.W.2d 443, 448 (Mich. 2008).  The court determined that the No-Fault Act "does not abrogate actions arising out of the breach of other common-law duties." *Id.* at 450.  "The fact that the dispute would not have arisen in the absence of the no-fault insurance contract does not mean that the action brought by the insureds is a no-fault action." *Id.*

Plaintiff asserts that the *Cooper* decision indicates that tort claims under Michigan law are "separate and distinct" and thus permitted "even with a self-contained contractual system like the No Fault Act." ECF No. 40, PageID.847.  This Court notes, however, that the Michigan Supreme Court specifically analyzed the common-law tort of fraud, not the tort of bad faith.  Indeed, the Michigan Supreme Court explained that where an insured's claim arises out of the insurer's fraudulent misrepresentations, rather than the insurer's mere failure to pay no-fault benefits, "the courts are faced with a fraud claim." *Cooper*, 751 N.W.2d at 450.  The bad faith claim alleged here, unlike a fraud claim, arises from Defendant's alleged omission to perform its contractual obligation to pay all the PIP benefits to which Plaintiff was entitled to.  The Court notes that Plaintiff excludes any allegation that

Defendant breached a duty which was "independent of and apart from the contractual undertaking" in her Complaint. *See Kewin v. Mass.*, 295 N.W.2d 50, 56 (Mich. 1980).

Plaintiff also argues that Arizona has an interest in seeing punitive damages imposed for conduct against its citizens that took place in Arizona. ECF No. 40, PageID.857. While the Court acknowledges that Arizona has an interest in compensating its residents for their injuries, the Court finds that this interest does not create a greater interest in applying Arizona law to Plaintiff's bad faith claim in this case in Michigan.

Defendant argues that Michigan has a "strong interest" in application of its law to this action. ECF No. 32, PageID.682. In its Motion, Defendant cites to *Magda v. Auto. Club Ins. Assoc.*, for its determination that Michigan had a strong interest in an action concerning an insurance contract which "conformed to Michigan's No-Fault Insurance laws, which are expansive and provide lifetime benefits." No. 14-cv-12144, 2015 WL 13036945, at *5 (E.D. Mich. Apr. 28, 2015). Further, Defendant emphasizes that the court determined that applying a foreign law "would make it difficult for a company to anticipate its future obligation," which "would change at a whim of the insured" depending on where the insured decided to relocate. *Id.*

Moreover, Defendant argues that Michigan has a substantial interest in preserving the legislative policies embodied in its No-Fault Act. ECF No. 32, PageID.684. It cites to *Cruz v. State Farm Mut. Auto. Inc. Co.* for the proposition that the No-Fault Act is a "comprehensive legislative enactment designed to regulate the insurance of motor vehicles in this state and the payment of benefits resulting from accidents involving those motor vehicles." *Id.* (citing *Cruz*, 648 N.W.2d 591, 595 (Mich. 2002). Further, Defendant emphasizes that the Michigan Catastrophic Claims Association ("MCCA") reimburses insurers for 100% of all PIP payments above a $250,000 threshold. MCL § 500.3104(2). It also argues that No-Fault Act does not allow for other tort-type remedies or punitive or exemplary damages, as requested by Plaintiff in her bad faith claim. *Id.* at PageID.685.

At the hearing, Defendant also emphasized that the Michigan legislature declined to include the tort of bad faith in its recent auto insurance reform legislation. 2019 Mich. Pub. Acts 21, 22. Defendant differentiated Michigan's comprehensive no-fault legislation with Arizona's regulatory policy regarding the deterrence of tortious conduct. In sum, Defendant argues that Michigan has a "substantial interest in applying [the] Michigan legislature's choice of available remedies for violations of Michigan's No-Fault Act, which reflects a balance between addressing failure to pay benefits owed under the Act and preserving the financial stability of insurers

participating in the Act and of the MCCA's larger insurance pool."  ECF No. 32, PageID.685.

This Court agrees with Defendant.  Michigan has an interest in precluding the use of insurance bad faith litigation in light of the comprehensive no-fault legislation.  Indeed, other foreign courts analyzing Michigan's law have acknowledged this interest.  *See Barten v. State Farm Mut. Auto. Ins. Co.*, 28 F. Supp. 3d 978, 986 (D. Ariz. 2014).  Further, the Michigan Supreme Court has noted that one of the significant purposes of the noneconomic damages limitation of the no-fault law is to relieve courts of the burden of litigation.  *See Byer v. Smith,* 357 N.W.2d 644, 646 (Mich. 1984).  This interest of the Michigan courts is implicated in any case brought under the no-fault law.  Further, the Court emphasizes that the parties entered into the underlying insurance contract in Michigan.  The contract conformed to Michigan's No-Fault Insurance laws; the parties thus had a "justified expectation that Michigan law would apply to the scope of coverage and the handling of claims."  *Magda*, 2015 WL 13036945, at *5.  Finally, while this Court acknowledges that Arizona has a strong interest in applying its law to further its regulatory policy "which is evident within its punitive damages law, this interest is not so overwhelming that it should displace the application of Michigan law."  *In re Disaster*, 750 F. Supp. at 808.  Accordingly, the Court finds that this fourth factor also weighs in Michigan's favor.

Next, the Court looks to whether the law of the foreign state would entitle the party to greater relief than the law of the party's home state. *Thompson*, 590 F. App'x at 540. Plaintiff argues that the "[a]pplication of Arizona law to the tort claim would provide Plaintiff with the exact rights she has under the laws of her home state, *i.e.*, Arizona." ECF No. 40, PageID.858. Specifically, Arizona law allows a bad faith tort action. *Rawlings v. Apodaca*, 726 P.2d 565, 576 (Ariz. 1986). Under Michigan law, a bad faith breach of an insurance contract does not create an independent and separate tort action. *Int'l Harvester Credit Corp. v. Wilkie*, 695 F.2d 231, 234 (6th Cir. 1982) (citation omitted). The fact that Arizona law may provide fuller compensation to Plaintiff's complaint as it relates specifically to Count II, on balance, does not outweigh Michigan's interests as the forum state. *See Hastings*, 2018 WL 3728932, at *4.

Finally, the sixth factor evaluates whether courts in the foreign state, Arizona, would apply Michigan law. *Thompson*, 590 F. App'x at 540. Plaintiff argues that Arizona courts would apply Arizona law to the insurance bad faith tort claim. ECF No. 40, PageID.858. She asserts that *Barten v. State Farm Mut. Auto. Ins. Co.*, 28 F. Supp. 3d 978 (D. Ariz. 2014) is "directly on point" for the instant action. *Id.* In *Barten*, the defendant insurance company moved for summary judgment on plaintiff's contract and bad faith claims. As to the bad faith claims, the defendant argued that Michigan law should apply. *Id.* at 982. The court agreed with plaintiff

and determined that Arizona law should apply to her tort claim. *Id.* at 987. In making its conclusion, the court considered the general tort choice-of-law principles of Restatement § 145 as well as the specific personal injury principles of Restatement § 146. *Id.* at 983. The court also applied the guidelines of both these sections to the general principles listed in Restatement § 6(2). *Id.* After applying these principles, the *Barten* court concluded that Arizona law should apply to the insurance bad faith claim "as it ha[d] the most significant relationship to the parties." *Id.* at 986.

Here, Defendant argues that the Arizona District Court in *Barten* did not determine that Arizona had a greater interest in Michigan's No-Fault Act than Michigan itself. ECF No. 41, PageID.892. This Court finds significance in Arizona's and Michigan's different choice-of-law principles for tort actions. Under Arizona choice-of-law rules, courts must apply the law of the state that has the most significant relationship to the occurrence and parties. "Arizona courts apply the principles of the Restatement (Second) of Conflict of Laws (1971) ("Restatement") to determine the controlling law for multistate torts." *Bates v. Superior Court of State of Ariz. In and For the Cty. of Maricopa,* 749 P.2d 1367, 1369 (Ariz. 1988). Under Michigan choice-of-law rules, as outlined above, there is a presumption that Michigan law applies unless there is a "rational reason" to displace it. *Standard Fire*, 723 F.3d at 693 (citing *Sutherland*, 562 N.W.2d at 471). Accordingly, federal courts sitting in Michigan do not apply the principles of Restatement §§ 145, 146,

and 6; rather, they engage in an "interests analysis" to determine whether a foreign law has a more significant interest than the forum's law. *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017) (citing *Sutherland*, 562 N.W.2d at 470).

The Court acknowledges that Arizona courts would apply Arizona law to Plaintiff's insurance bad faith tort claim; thus, the sixth factor weighs in Arizona's favor. However, the Court reiterates that the Arizona District Court in *Barten*, ultimately concluded that as the forum state, Arizona had an interest in making sure that its residents are compensated for their injuries—an interest which the foreign law, Michigan, could not overcome. Here, as Michigan is the forum state with different choice-of-law rules guiding tort actions, the Court questions how relevant this factor is for the instant action.

In sum, the Court finds that Arizona law should not apply in light of Defendant's lack of requisite contacts with Arizona. Furthermore, even if there were no due process concerns, Michigan's interests in this case outweigh any interests Arizona may have. Accordingly, Plaintiff's tort claim (Count II) will be governed by Michigan law.

**B. Applying Michigan Law to Plaintiff's Bad Faith Claim (Count II)**

Michigan law, which governs this matter, does not recognize a tort action for bad faith failure to pay PIP benefits. *See Ulrich v. Fed. Land Bank of St. Paul*, 480

N.W.2d 910, 911–12 (Mich. Ct. App. 1991) (citations omitted); *see also Taylor v. Blue Cross/Blue Shield of Mich.*, 517 N.W.2d 864, 871 (Mich. Ct. App. 1994). "Where, as in the present case, an insured alleges that his insurer has failed to pay benefits under an insurance policy, he may not sue in tort for that failure; rather, the insured's exclusive remedy is to sue on the contract." *Villaflor v. State Farm Mut. Auto. Ins. Co.*, No. 10-cv-14760, 2011 WL 13161246, at *2 (E.D. Mich. Mar. 29, 2011). The Court notes that Plaintiff also brings a breach of contract claim (Count I) against Defendant in the instant action.

Generally, in a contractual setting, "a tort action must rest upon a breach of duty distinct from the contract." *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 910 (Mich. 1985). When tort claims have been permitted in the insurance context under Michigan law, they have thus rested on duties separate from the insurer's duties arising under the contract. *See Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 450–51 (Mich. 2008). As explained in the preceding section, the bad faith claim alleged here, unlike the fraud claim at issue in *Cooper*, arises from Defendant's alleged omission to perform its contractual obligation to pay all the PIP benefits to which Plaintiff was entitled to. Plaintiff's bad faith claim is thus not based on a duty that arises separately from the insurance policy.[9]

---

[9] The Court denotes that other courts within this District have determined that an insurer's "allegedly bad faith conduct in processing a claim may be relevant in determining whether the insurer breached the contract." *See, e.g., Villaflor v. State*

Accordingly, Count II is dismissed.

## IV. CONCLUSION

For the reasons articulated above, the Court will **GRANT** Defendant's Motion for Partial Judgment on the Pleadings as to Count II of Plaintiff's First Amended Complaint [#32].

**IT IS SO ORDERED.**

Dated:        June 16, 2020

/s/Gershwin A. Drain
HON. GERSWHIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 16, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

---

*Farm Mut. Auto. Ins. Co.*, No. 10-cv-14760, 2011 WL 13161246, at *2 (E.D. Mich. Mar. 29, 2011) (citing *Santos v. Farmers Ins. Exch.*, No. 07-11229, 2008 WL 2937776, at *7 (E.D. Mich. July 24, 2008)).